UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND | § | |
| EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1742-B |
| | § | |
| CONNECTAJET.COM, INC., et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Stephen Fayette's ("Fayette") Motion to Dismiss (Doc. 17)

under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be

granted.  For the reasons stated below, the Court **DENIES** the Defendant's Motion to Dismiss (Doc.

17).

I.

BACKGROUND[1]

A.  The ConnectAJet Securities Scheme

ConnectAJet, Inc. ("CAJ") is a Nevada corporation based in Austin, Texas that allegedly is

in the process of developing a website dedicated to booking private jet airplane travel.  (Am. Compl.

¶ 7.)  In July 2007, CAJ initiated a national marketing campaign in which it purported to have

---

[1]The Court takes its factual account from the allegations contained in the SEC's Amended
Complaint (Doc. 5).  *See, e.g., Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir.
2002) (stating that when reviewing a motion to dismiss under Rule 12(b)(6), "all facts pleaded in the
complaint must be taken as true.").

revolutionized air travel through its website booking system.  (*Id*. at ¶ 1.)  CAJ's claims about the website were inaccurate and exaggerated the website's use of real-time information.  (*Id*. at ¶¶ 2, 5.)  In actuality, the marketing campaign operated as part of CAJ's Chief Executive Officer Martin T. Cantu's ("Cantu") and stock promoter Timothy Page's ("Page") scheme to funnel CAJ shares to the public in hopes of collecting a large profit.  (*Id*. at ¶ 2.)

Cantu's and Page's scheme first required that CAJ issue 30 million shares of stock[2] to several investors, including Testre LP ("Testre"), Verona Funds LLC ("Verona Funds"), Wynn Holdings LLC ("Wynn"), and Lugano Funds LLC ("Lugano Funds") (collectively the "Investors").  (*Id*. at ¶ 3.)  Notably, Testre and Verona Funds were owned and operated by Page.  (*Id*.)  Each of the Investors executed a subscription agreement with CAJ in which it was represented that the securities were being purchased for investment purposes only, not for resale.  (*Id*. at ¶ 25.)  Subsequently, some of the Investors gifted portions of their shares to other accounts, including accounts owned by John Coutris, Reagan Rowland, Rodney Rowland, and Edward Spahiu (the "Relief Defendants").[3]  (*Id*. at ¶¶ 34-35.)

Next, CAJ and Cantu increased public demand for CAJ stock through their propagation of

---

[2]The CAJ stock qualified as a "penny stock," as defined by the Exchange Act, at all times pertinent to the SEC's Amended Complaint.  (Am. Compl. ¶ 7.)

[3]Specifically, on August 27, 2007, Page caused Verona Funds to gift 100,000 CAJ shares to brokerage accounts owned by his children.  (Am. Compl. ¶ 34.)  Page retained trading authority over these accounts.  (*Id*.)  On August 20, 2007, Lugano transferred 200,000 CAJ shares to John Coutris, 100,000 CAJ shares to Edward Spahiu, and 100,000 CAJ shares to Reagan and Rodney Rowland.  (*Id*. at ¶ 35.)  Lugano Funds received no consideration in return for such transfers.  (*Id*. at ¶ 36.)  Additionally, Cantu orchestrated a series of transactions whereby Verona Funds distributed stock to Firenze Funds LLC ("Firenze Funds"), an entity owned by Cantu's father, as part of a consulting agreement.  (*Id*. at ¶¶ 46-48.)  Firenze Funds did not pay consideration for the stock, and all profits garnered from its eventual sale were forwarded to Cantu and his father.  (*Id*.)

the misleading national marketing campaign that included false press releases and misleading website content. (*Id.*) Finally, the Investors and those who had been gifted stock sold the CAJ stock into the public market for millions of dollars. (*Id.*) There was no registration statement in place for the stock that was sold, nor was it in compliance with the public disclosure requirements established by federal law. (*Id.*) The scheme's operation was facilitated by Stockbroker Fayette's liquidation of CAJ shares on behalf of Testre, Verona Funds, and other early investors. (*Id.*)

### B. Fayette's Role in the Distribution of CAJ Stock to the Public

Between June 2007 and July 2008, Fayette was a registered representative of Fagenson & Co. ("Fagenson"), a registered broker-dealer. (*Id.* at ¶ 29.) During his employment with Fagenson, Fayette assisted the Investors, the Relief Defendants, and Firenze Funds in opening new brokerage accounts (the "Fagenson Accounts"). (*Id.*) Prior to working at Fagenson, Fayette worked as a registered representative at another broker-dealer, Franklin Ross, Inc., where his clients included companies controlled by the same individuals who control Testre, Verona Funds, Wynn Holdings, and Lugano Funds (*Id.* at ¶ 30.)[4]

Beginning in August 2007, Fayette sold unregistered shares of CAJ to the public on behalf of Testre, Verona Funds, Wynn Holdings, Lugano Funds, and Firenze Funds. (*Id.* at ¶¶ 7, 31-39.) However, from July 2007 to the present, no registration statement was filed or in effect for the sale of CAJ stock. (*Id.* at ¶¶ 3, 4, 44, 66.) Fayette's sale of such CAJ shares were made using instrumentalities of interstate commerce. (*Id.* at ¶¶ 40, 51, 64.) During the six months from August 2007 to January 2008, Fayette generated over $200,000 in commissions and fees by executing sales

---

[4]Page controls both Testre and Verona Funds (Am. Comp. ¶¶ 11-13), Jason Wynn controls Wynn Holdings (Am. Comp. ¶ 30), and Ryan Reynolds controls Lugano Funds (Am. Comp. ¶ 30).

of CAJ shares. (*Id.* at ¶ 42). Fayette violated securities laws by selling these unregistered shares to the public and by failing to conduct a reasonable inquiry under the circumstances as to whether his customers were acting as underwriters. (*Id.* at ¶¶ 3, 41, 43.)

The Securities and Exchange Commission ("SEC") filed the instant action on September 18, 2009. On September 24, 2009, the SEC filed its Amended Complaint (Doc. 5) asserting claims against Defendants CAJ, Cantu, Martin M. Cantu (Cantu's father), Firenze Funds, Verona Funds, Testre, Page, Fayette and the Relief Defendants. (*See generally id.*) The Amended Complaint alleges Fayette violated Sections 5(a) and 5(c) of the Securities Act by engaging in a scheme to sell unregistered shares of CAJ stock to public investors without fair and full disclosures. (*Id.* at ¶¶ 3, 22, 30, 67.) On December 2, 2009, Defendant Fayette filed a Motion to Dismiss (Doc. 17) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The parties have fully briefed the motion, and the Court now turns to the merits of its decision.

## II.

## LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

In analyzing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "A motion to dismiss under Rule 12(b)(6) is 'viewed with disfavor and is rarely granted.'" *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (quoting *Lowrey v. Texas*

*A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).  A Rule 12(b)(6) motion to dismiss should be granted only if the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  However, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).   The Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

### B.  Securities Act Sections 5(a) and 5(c), 15 U.S.C. §§ 77e(a), e(c) ("Securities Act")

A plaintiff may initially establish a prima facie case of a violation of Sections 5(a) and 5(c)[5] of the Securities Act by showing the following:  "(1) no registration statement was in effect as to the

---

[5] Section 5 of the Securities Act, in relevant part, states the following:
(a) Sale or delivery after sale of unregistered securities.  Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale . . . . (c) Necessity of filing registration statement.  It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security . . . . 15 U.S.C. § 77e(a), e(c).

securities, (2) the defendant sold or offered to sell the securities, (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972); *SEC v. Reynolds*, no. 3-08-CV-0384, 2008 WL 3850550, at *4 (N.D. Tex. Aug. 19, 2008) (Boyle, J.). The Securities Act expressly provides that liability extends to "any person, directly or indirectly" who sells unregistered securities in violation of the Act. 15 U.S.C. § 77e(a). Thus, the provision includes brokers and dealers. *See id.* To determine whether or not a person is liable as a seller of securities, courts have assessed whether or not "the defendant's actions [were] 'a substantial factor' in bringing about the plaintiff's purchases." *Pharo v. Smith*, 621 F.2d 656, 667 (5th Cir. 1980). Courts have also recognized that liability has extended to "parties who participate in the negotiations of or arrangements for the sale of unregistered securities . . . [and] parties responsible for bringing about sales of securities they themselves do not own." *Lewis v. Walston & Co.*, 487 F.2d 617, 621 (5th Cir. 1973).

Once a plaintiff has established a prima facie case, the burden shifts to the defendant to prove that the defendant has satisfied one of the exemptions to Securities Act Section 5. *Cont'l Tobacco*, 463 F.2d at 156. Sections 4(3) and 4(4) of the Securities Act provide exemptions to non-owners such as brokers. 15 U.S.C. § 77d(3). Section 4(3) exempts transactions by a dealer that take place more than forty days after the security was offered to the public by the issuer or underwriter. 15 U.S.C. § 77d(3)(A). Section 4(4) exempts brokers' transactions where a broker makes reasonable inquiry into whether the person for whom the securities are sold is an underwriter of the security. 15 U.S.C. § 77d(4); 17 C.F.R. § 230.144(g). Thus, the Section 4(4) exemption is "unavailable to any broker-dealer acting as an agent when the broker knows or has reasonable grounds to believe that his principal is an underwriter." *In re Jacob Wonsover*, Exchange Act Release No. 34-41123, 69

S.E.C. Docket 608, 1999 WL 100935, at *7 (Mar. 1, 1999), *aff'd*, 205 F.3d 408, 416 n.12 (D.C. Cir. 2000).  A broker's "searching inquiry is called for" when "a dealer is offered a substantial block of a little-known security . . . or where the surrounding circumstances raise a question as to whether or not the ostensible sellers may be merely intermediaries for controlling persons or statutory underwriters." *Wonsover v. S.E.C.*, 205 F.3d 408, 415 (D.C. Cir. 2000) (quoting *Distribution by Broker-Dealers of Unregistered Sec.*, Exchange Act Release No. 6721, 1962 WL 69442 (Feb. 2, 1962)).

## III.

## ANALYSIS

The parties' briefings relating to Fayette's Motion to Dismiss discuss whether the SEC has properly alleged a claim, and whether Fayette is exempt from Securities Act Section 5 liability.  The Court will consider each issue in turn.

### A.  Violation of Securities Act Sections 5(a) and 5(c)

Fayette contends the SEC fails to state a claim that Fayette violated Securities Act Section 5 because Fayette did not offer or sell CAJ stock as required under a Section 5 prima facie claim. (Def.'s Mot. to Dismiss 7-8.)  Fayette further argues he was not a "substantial factor" in the CAJ stock transactions. (*Id.*)  Fayette contends that the Amended Complaint only alleges facts showing Fayette merely executed sales orders. (Def.'s Mot. to Dismiss 8.)

In opposition, the SEC alleges it has sufficiently pleaded facts that Fayette actively facilitated the illegal distribution of unregistered shares.  (Pl.'s Resp. 8.)  In the Amended Complaint, the SEC alleges the following:  Fayette opened new brokerage accounts on behalf of Defendants including Testre, Verona Funds, and Firenze Funds; Fayette ignored red flags that these accounts received a large number of CAJ shares from a thinly-traded company, CAJ; and Fayette sold CAJ stock from

- 7 -

these accounts according to the transaction dates, number of shares sold, and share prices listed in the Amended Complaint. (Am. Compl. ¶¶ 29, 31-34, 37, 40, 42-43, 51, 63.) In considering a Rule 12(b)(6) motion, "[t]he issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims." *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996). The SEC has pleaded sufficient factual content on the second element of the Securities Act Section 5 claim to draw a reasonable inference that Fayette sold CAJ stock.

The Amended Complaint also sufficiently alleges the remaining two elements of a prima facie claim for a Securities Act Section 5 violation. First, the SEC alleges that from July 2007 to the present, no registration statement was filed or in effect for the sale of CAJ stock. (Am. Compl. ¶¶ 3, 4, 44, 66.) Second, the SEC alleges that Fayette made use of the instrumentalities of interstate commerce to effect the unregistered sale of CAJ stock to the public, such as interstate faxes and emails. (*Id.* at ¶¶ 40, 51, 64.) Therefore, the SEC's Amended Complaint sufficiently alleges a claim for a violation of Section 5 of the Securities Act.

## B. Exemptions to Securities Act Section 5 violations

Fayette additionally contends that even if the SEC has established a prima facie case for a Section 5 violation, Fayette is not liable because he falls under two exemptions to the Securities Act. (Def.'s Mot. to Dismiss 9-11.) First, Fayette argues that the CAJ stock sales were exempt under Securities Act Section 4(3). (*Id.*) Second, Fayette contends he is exempt under Securities Act Section 4(4) because he was only executing customer orders. (*Id.* at 11.)

In opposition, the SEC alleges that Fayette does not qualify for either a Securities Act Section 4(3) or Section 4(4) exemption. First, the SEC contends that the Investors for whom Fayette sold CAJ stock were statutory underwriters, thus the exemption under Section 4(3) does not apply to

Fayette (Pl.'s Resp. 8). The SEC further alleges that because Fayette failed to conduct a reasonable inquiry under the circumstances, the Section 4(4) exemption is unavailable (*Id.* at 9-10).

Both the Parties' arguments involve a dispute of fact over whether Fayette qualifies for a Securities Act Section 4(3) or Section 4(4) exemption.  By arguing exemptions that may preclude a claim under Section 5, Fayette is essentially offering an affirmative defense.  "When a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate." *Kansa Reinsurance Co. v. Congressional Mortg. Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994) (citing *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).  In the case at bar, it is not clear from the face of the SEC's Amended Complaint whether Fayette is exempt from Section 5 liability.  In order to determine if an exemption applies, the Court would need to consider factual issues beyond the face of the pleadings.  Thus, at this stage, the Court will not determine whether Fayette satisfies either the Section 4(3) exemption or the Section 4(4) exemption.

## IV.

## CONCLUSION

For the reasons discussed above, the Court finds that the Amended Complaint sufficiently states a claim alleging Fayette violated Sections 5(a) and 5(c) of the Securities Act.  Accordingly, the Court **DENIES** Defendant's Motion to Dismiss (Doc. 17).

**SO ORDERED.**

**DATED June 17, 2010**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE