UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND | § | |
| EXCHANGE COMMISSION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-CV-1742-B |
| | § | |
| CONNECTAJET.COM, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION & ORDER</u>

Before the Court is Plaintiff Securities and Exchange Commission's ("SEC") Motion for Summary Judgment Against Defendants Timothy T. Page and Testre LP (collectively, "Page") filed June 30, 2011 (doc. 67). Also before the Court is the SEC's Motion for Summary Judgment Against Relief Defendants Regan Rowland, Rodney Rowland, and John Coutris (the "Relief Defendants") filed June 30, 2011 (doc. 68).[1] For the reasons stated below, the SEC's Motion as to Page is **GRANTED IN PART** and **DENIED IN PART**. The SEC's Motion as to Page is **GRANTED** to the extent it seeks summary judgement regarding Page's liability, disgorgement, and prejudgment interest. The SEC's Motion as to Page is **DENIED** to the extent it seeks summary judgment regarding the appropriateness of a permanent injunction, a third-tier civil penalty, and a penny stock bar. The SEC's Motion as to the Relief Defendants is **GRANTED**.

---

[1]The Court refers to the SEC's Motion for Summary Judgment Against Defendants Timothy T. Page and Testre LP and the supporting brief as "SEC Page Motion" and "SEC Page Brief," respectively. The Court refers to the SEC's Motion for Summary Judgment Against Relief Defendants Regan Rowland, Rodney Rowland, and John Coutris and the supporting brief as "SEC Relief Defendants Motion" and "SEC Relief Defendants Brief," respectively.

## I.

## BACKGROUND

ConnectAJet, Inc. ("CAJ") is a Nevada corporation based in Austin, Texas. The SEC alleges that Defendants CAJ, Martin T. Cantu, Martin M. Cantu, Firenze Funds, LLC, Timothy T. Page, Testre LP, Verona Funds LLC, and Stephen Fayette schemed to funnel CAJ shares to the public through a "pump and dump" stock scheme under which CAJ issued CAJ stock shares to several investors, CAJ pumped demand for the shares through a national marketing campaign, false press releases, and misleading website content, and then the investors participating in the scheme sold the stock into the public market when no stock registration statement was in place.

Regarding Page's specific role, in July 2007, Page, through his proxies Testre LP ("Testre") and Verona Funds LLC ("Verona Funds"), entered into two subscription agreements with CAJ in which he purchased ten million shares of CAJ common stock for $100,000, or one cent per share. SEC Mot. Summ. J. Exs.[2] 24-27. Page represented in his subscription agreements that he had no intent to distribute the shares to the public. SEC Ex. 24 at App. 201; SEC Ex. 26 at App. 207. Between August 17 and August 20, 2007, CAJ issued 30 million shares to Page, Ryan Reynolds ("Reynolds"), and Jason Wynn[3] ("Wynn") in care of Page. SEC Ex. 31 at App. 230. Page then sent ten million shares each to Reynolds and Wynn and kept ten million shares. SEC App. Kustusch Decl. ("Kustusch Decl.") ¶¶ 13-18. No registration statement was filed or in effect for the offer or

---

[2]The SEC filed one appendix for both of its motions for summary judgment.

[3]The SEC filed suit against Reynolds and Wynn in Case No. 3:08-cv-438-B, *SEC v. Reynolds*, in the Northern District of Texas in connection with Reynold's and Wynn's alleged conduct in the Connect-A-Jet stock transactions and other alleged pump and dump schemes. That case is currently pending, though the majority of defendants (but not Reynolds) in that case have consented to final judgment with respect to the SEC's Section 5 claims.

sale of stock by CAJ. SEC Ex. 45. Less than a week after receiving his CAJ shares, Page sold 1.2 million of these shares on the public market, profiting almost $1.4 million in the first 48 hours of trading. Kustusch Decl. ¶ 40. Page sold these shares through Reynolds, who had trading authority over the Testre and Verona Funds brokerage accounts which received Page's shares. SEC Exs. 3, 14. Over the first six months of trading, from August 2007 through January 2008, Page sold 4.3 million shares for a profit of over $2.5 million. Kustusch Decl. ¶ 40. No registration statement was filed or in effect for Page's distribution. SEC Ex. 45.

After receiving his 10 million shares, Reynolds transferred 100,000 shares to his sister Reagan Rowland and her husband Rodney Rowland on August 29, 2007. SEC Ex. 13; SEC Ex. 54 at App. 465. The shares were given as a gift. SEC Ex. 13 at App. 125; SEC Ex. 54 at App. 453-54, 465. Prior to receiving those shares, the Rowlands had opened a joint brokerage account and had given Reynolds authority to execute trades on their behalf. SEC Ex. 54 at App. 455-57. Soon after transferring shares to the Rowlands, Reynolds began selling these shares, resulting in $116,386 in profits for the Rowlands from the sale of 64,800 shares by October 2007. Kustusch Decl. ¶¶ 43-44. There was no registration statement in place for these trades.[4] SEC Ex. 45.

Reynolds also transferred 200,000 CAJ shares to Relief Defendant John Coutris on August 24, 2007. SEC Ex. 12; SEC Ex. 16 at App. 154. These shares appear to be compensation to Coutris pursuant to a consulting agreement between Reynolds and Coutris for his role in soliciting buyers

---

[4]On September 26, 2007, the SEC filed suit against Page, Testre, and Reynolds, among other defendants, in the Northern District of Texas in *SEC v. Offill*, Case No. 07-cv-1643-D, for conducting Rule 504 offerings similar to those alleged in this case. Page was notified of the SEC's intention to sue him on August 28, 2006 and he waived service of process of the *Offill* complaint on November 5, 2007. SEC Exs. 67, 68. The SEC argues that this suit shows that Page knew that the SEC viewed his Rule 504 offerings as violations of the registration provisions of federal securities law and yet "went full steam ahead with his sale of CAJ stock to the public." SEC Page Br. 7.

for CAJ stock at the time of CAJ's unregistered offering. SEC Ex. 12; SEC Ex. 50 at App. 407. Prior to receiving those shares, Courtis had opened a joint brokerage account and had given Reynolds authority to execute trades on his behalf. SEC Ex. 18. Reynolds sold 140,000 of Coutris' shares within two months, resulting in proceeds of $244,605. Kustusch Decl. ¶ 42. The SEC argues that these shares and proceeds, even if compensation for services rendered by Coutris, are ill-gotten gains obtained through Coutris' role in facilitating the sale of stock into the public market without registration.

The SEC filed the instant action on September 18, 2009 and its amended complaint on September 24, 2009. The Amended Complaint alleges, *inter alia*, that Page and Testre violated Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e ("Section 5"), by engaging in a scheme to sell unregistered shares of CAJ stock to public investors without fair and full disclosures.[5] Am. Compl. ¶¶ 62-67. The Amended Complaint also alleges that the Relief Defendants Reagan Rowland, Rodney Rowland, and John Coutris were unjustly enriched through their receipt of CAJ shares from Reynolds and Page. The Court previously entered final judgments as to Defendants Martin T. Cantu, CAJ , Martin M. Cantu, Firenze Funds, Verona Funds, and Fayette and Relief Defendant Edward Spahiu. On June 6, 2010, the SEC filed its motion for summary judgment against Defendants Page and Testre as well as its motion for summary judgment against the Relief Defendants. The parties have fully briefed the motions, and the Court now turns to the merits of its decision.

---

[5]Prior to agreeing to final judgment, Fayette filed a motion to dismiss the SEC's Section 5 claims against him. The Court denied Fayette's motion, finding that the Amended Complaint sufficiently stated a claim against him for violation of Sections 5(a) and 5(c) of the Securities Act. Mem. Op. & Order June 17, 2010.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371-72 (5th Cir. 2002).

In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Once the movant has met its burden, the burden shifts to the non-movant, who must show that summary judgment is not appropriate. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with 'some metaphysical doubt as to material facts,' . . . by 'conclusory allegations,' . . . by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). A non-moving party with the burden of proof must "identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim," *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004), and "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*, 475 U.S. at 587 (emphasis in original) (quoting FED R. CIV. P. 56(e)).

## III.

## ANALYSIS

The parties' briefing relating to the SEC's summary judgment motion discusses whether the SEC has made a prima facie case that Page violated Section 5 of the Securities Act, and whether Page has met his burden of showing that he is exempt from Section 5 liability. The parties also dispute, *inter alia*, whether the SEC can order disgorgement from the Relief Defendants without a prior finding by the Court that Reynolds violated Section 5. The Court will consider each issue in turn.

A.    *Section 5*

A plaintiff may initially establish a prima facie case of a violation of Sections 5(a) and 5(c)[6] of the Securities Act by showing the following: "(1) no registration statement was in effect as to the securities, (2) the defendant sold or offered to sell these securities, and (3) interstate transportation or communication and the mails were used in connection with the sale or offer of sale." *SEC v. Cont'l Tobacco Co.*, 463 F.2d 137, 155 (5th Cir. 1972). The Securities Act expressly provides that liability

---

[6] Section 5 of the Securities Act, in relevant part, states the following:

(a) Sale or delivery after sale of unregistered securities. Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale . . . . (c) Necessity of filing registration statement. It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security . . . .

15 U.S.C. § 77e(a), e(c).

extends to "any person, directly or indirectly" who sells unregistered securities in violation of the Act. 15 U.S.C. § 77e(a). To determine whether or not a person is liable as a seller of securities, courts have assessed whether or not the defendant was a "necessary participant" or a "substantial factor" in the offering or selling of the unregistered securities. *SEC v. Friendly Power Co.*, 49 F. Supp. 2d 1363, 1372 (S.D. Fla. 1999) (quoting *SEC v. Holschuh*, 694 F.2d 130, 139 (7th Cir. 1982)).

The SEC argues that Page, through Testre and Verona Funds, sold millions of shares of CAJ stock to the public, no registration statement was on file or in effect for the offerings, and Page used the instrumentalities of interstate commerce in completing his sales, thus establishing a prima facie case against Page under Section of the Securities Act. In response, Page does not dispute that there was no registration statement in effect and that he has the burden of proving that the sales were exempt from the registration requirements. Page argues, though, that he "relied on Rule 504, and the attorney's opinion letter setting out the requirements for the exemption."[7] Page Opp'n 7-9 (citing SEC Ex. 28 (attorney opinion letter stating that CAJ offering was exempt from registration)).[8] In relying on this argument, Page implicitly concedes that the SEC has made a prima facie case that

---

[7]Page does not attach an affidavit or testimony stating that he in fact relied on Rule 504 and the attorney's opinion letter. Rather, he only argues this in his brief. He does attach testimony from Martin Cantu from October 26, 2008 and a "Lion Capital Holdings, Inc. 504 Offering Agreement for Ecogate, Inc.," and cites to SEC evidence, primarily in support of his argument that he did not orchestrate the unregistered offering in this case.

[8]Page spends several pages of his briefing disputing the SEC's characterization of the relevant evidence. However, much of this dispute goes to Page's state of mind, motivation, and particular role for his actions in connection with CAJ stock. While relevant to the issue of remedies, the issues of intent and whether Page "orchestrated" CAJ's Rule 504 offering need not be resolved for the Court to determine on summary judgment whether Page participated in the unregistered offer or sale of securities in interstate commerce. *See, e.g., Friendly Power*, 49 F. Supp. 2d at 1367, 1372 (scienter is not an element of a prima facie case under Section 5, and defendant must be a "necessary participant" or a "substantial factor" in the offering or selling of the unregistered securities).

he participated in an unregistered offering of CAJ stock as defined by Section 5. In light of the SEC's evidence[9] and Page's failure to rebut this evidence, the Court finds that the SEC has met its burden of showing a prima facie case that Page participated in an unregistered public stock offering.

B.    *Exemptions to Section 5*

As the SEC has met its burden of showing a prima facie case of violation of Section 5, the burden now shifts to Page to show that an exemption applies under which Page was not required to meet the normal stock registration requirements. *See Cont'l Tobacco*, 463 F.2d at 156. The Court first notes that Page's purported reliance on an attorney opinion letter stating that the CAJ offering was exempt from Section 5 registration requirements does not absolve Page from liability under Section 5 if he does not in fact qualify for an exemption.[10] As stated by one court, "neither a good faith belief that the offers or sales in question were legal, nor reliance on the advice of counsel, provides a complete defense to a charge of violating Section 5 of the Securities Act." *Friendly Power*, 49 F. Supp. 2d at 1368 (citations omitted).

Page also fails to identify any exemption that would apply in this case. Page points to Rule 504(b)(1)(iii) to argue that his stock sales were exempt from Section 5 registration requirements. Page Opp'n 7-9. This rule states that offers and sales of securities not exceeding $1,000,000 are exempt from the registration requirement "[e]xclusively according to state law exemptions from registration that permit general solicitation and general advertising so long as sales are made only to 'accredited investors' as defined in Rule 501(a)." Page highlights language in SEC Release No. 33-

---

[9]*See* Section I, *supra*.

[10]Further, as previously noted by the Court, Page only argues this point in his brief and does not submit an affidavit or testimony stating that he in fact relied on the attorney opinion letter.

8828 (August 3, 2007), which quotes this language and states "[s]ecurities sold without registration in reliance on this provision are not subject to the limitations on resale established in Rule 502(d) and, as such, are not 'restricted securities' for purposes of Rule 144(a)(3)(ii)." Page argues that the Rule 504 exemption is unavailable to him only if he had a "bad intent to distribute," and that the facts do not support an inference of this bad intent. Page Resp. 8. In support of his argument that the facts do not support an inference of bad intent, Page argues that "the trading records show that Page bought 10,000,000 shares of CAJ, sold some shares when prices were high but sold less than half of it in total and over a lengthy period" and "sold the majority of what he did sell long after the price had substantially declined." Page Resp. 8. In his view, this pattern is in keeping with what the "average investor does when he or she acquires a substantial amount of stock for investment," rather than a scheme to immediately distribute the stock.[11] *Id.* at 8-9.

As pointed out by the SEC, Page does not explain how Rule 504(b)(1)(iii) applies to CAJ, nor does he identify any state law that meets this subsection's standard.[12] Further, Page does not explain how, even if Page's CAJ shares were acquired through an exempt transaction, how the resale of these shares is exempt from registration requirements. *See, e.g., SEC v. McNamee*, 481 F.3d 451, 453 (7th Cir. 2007) (Section 5 applies to the sale of Rule 504 shares 'until the shares [come] to rest in the hands of bona fide investors."); *In re Carley*, Securities Act Rel. No. 8888, 2008 WL 268598, at *8-9 (July 18, 2005) (assuming an offering complied with Rule 504, "any resale of the shares had

---

[11]Page argues in his brief that he was participating in normal trading activity but does not submit any affidavit or testimony regarding his intent underlying this trading activity.

[12]The SEC attaches an attorney opinion letter discussing how the CAJ offering may qualify for an exemption under Rule 504, SEC Ex. 29, but Page does not discuss the arguments set forth in the opinion letter nor whether the actual CAJ offering does in fact qualify.

to be registered or qualified for an exemption"). Accordingly, the Court finds that there is no genuine issue of material fact as to whether Page is exempt from registration requirements under Rule 504.

The Court also rejects Page's contention that there is a fact issue regarding Page's intent to distribute his shares when he acquired them. Courts frequently employ an objective two-year holding period rule of thumb to determine whether a seller acquired shares with a view to distribution. *See, e.g., Ackerberg v. Johnson*, 892 F.2d 1328, 1336 (8th Cir. 1989); *SEC v. Olins*, 2010 WL 900518, at *2 (N.D. Cal. Mar. 12, 2010). As shown by the SEC's summary judgment evidence, Page and his proxies started reselling their shares to the public within days of receiving the shares, selling 1.2 million shares in less than one week and 4.3 million shares in less than six months. Although Page did buy 75,000 shares of CAJ stock on the open market and did not sell all of his stock to the public, such actions do not merit disregard of the normal two-year holding period rule of thumb.[13]

The Court is mindful of the need to look at the substance of the CAJ offering and the purpose of the registration requirements: "to protect investors by promoting full disclosure of information thought necessary to informed investment decisions." *SEC v. M&A West Inc.*, 538 F.3d 1043, 1052-34 (9th Cir. 2008) (quoting *SEC v. Ralson Purina Co.*, 346 U.S. 119, 124 (1953)). Viewing the facts in a light most favorable to the defendant while still viewing Page's trading activity in its entirely, the Court finds that there is no genuine dispute of material fact as to whether Page participated in a public offering of CAJ stock which was subject to Section 5, and whether he was

---

[13]The Court does not speculate on Page's motivation for buying additional CAJ shares on the open market nor his reasons for not selling all his CAJ stock.

subject to any exemption from the registration requirements.[14] Accordingly, the Court finds that there is no dispute of material fact as to whether Page violated Section 5 of the Securities Act, and the Court **GRANTS** the SEC's motion to the extent it seeks summary judgment as to Page's liability under Section 5.

C.      *Relief Defendants*

A court may order equitable relief against "a person who is not accused of wrongdoing in a securities enforcement action where that person: 1) has received ill-gotten funds; and 2) does not have a legitimate claim to those funds." *SEC v. George*, 426 F.3d 786, 798 (6th Cir. 2005) (quoting *SEC v. Cavanagh*, 155 F.3d 129, 136 (2d Cir. 1998)). Once the SEC meets its burden of showing a prima facie case of its entitlement to equitable relief, the relief defendants must present "affirmative evidence, not just affirmative assertions, demonstrating a disputed issue of material fact." *Id.* (citing *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996)).

The Court has already found that the SEC made a prima facie case that Page violated Section 5 due to his participation in the unregistered offering of CAJ stock. Similarly, the SEC's summary judgment evidence shows that Ryan Reynolds also participated in the unregistered offering of CAJ stock, for which he received ten million shares of stock from Page. Kustusch Decl. ¶¶ 17-18 (discussing Lugano Funds CAJ stock transactions); SEC Exs. 11, 14, 23, 30, 31 (evidence regarding distribution of CAJ shares to Lugano Funds and subsequent sales); SEC Ex. 45 (SEC attestation

---

[14]The SEC and Page also dispute whether the Court may make an adverse inference against Page for refusing to testify on Fifth Amendment grounds. The Court does not reach this issue at this time as the Court finds that there is no genuine issue of material fact regarding whether he violated Section 5 of the Securities Act even without a finding that Page's refusal to give testimony based on Fifth Amendment grounds gives rise to an adverse inference against him.

stating that no registration statement was in effect for any CAJ offerings). As such, the SEC has met its burden of showing that Reynolds' shares were ill-gotten gains.

The SEC also produced evidence that Reynolds gifted 100,000 shares of this stock to Relief Defendants Reagan Rowland and Rodney Rowland, and his later sale of these shares on behalf of the Rowlands generated $116,386 of profits. *See* Section I, *supra*. The SEC also produced Reagan Rowland's testimony where she admits that she received her shares as a gift, which tends to show that the Rowlands had no legitimate claim on the proceeds they received from the sale of these shares. *See id.*; *George*, 426 F.3d at 798; *Cavanaugh*, 155 F.3d at 136.[15]

The SEC's evidence also shows that Reynolds then transferred 200,000 shares of CAJ stock to Coutris which were eventually sold, resulting in $244,605 in profits. *See* Section I, *supra*. Coutris stated in a deposition that the consulting work he performed for Reynolds was "nominal" and consisted primarily of communicating to dealers and investors regarding CAJ. SEC Ex. 50 at 407. Such statement suggests that the shares he received were either a gift or compensation for the work Coutris performed in furtherance of the unregistered offering of CAJ stock. Under either characterization, Coutris has no legitimate claim on the proceeds from the sale of his CAJ shares. *See SEC v. Infinity Group Co.*, 993 F. Supp. 324, 331 (E.D. Pa. 1998) ("Illegal consideration is invalid consideration and thus cannot shield ill-gotten gains from disgorgement.").

As the SEC has established its prima facie case, the burden shifts to the Rowlands and Coutris to show affirmative evidence that the gains were not ill-gotten or that they had a legitimate claim to them. They neither cite SEC evidence nor offer any of their own evidence to rebut the

---

[15]The Court expresses no opinion as to whether Reagan Rowland would have a legitimate claim on her shares if she had received them as compensation for her work for Reynolds.

SEC's prima facie case, to argue that an exemption to Section 5 applies, or to argue that they have a legitimate claim to their CAJ stock proceeds.[16] Instead, the Relief Defendants argue there has been no prior finding by the Court that Reynolds violated Section 5 such that their gains should be considered "ill-gotten." Relief Defs.' Resp. 1-3.[17] While it is true that the Court has not yet determined whether summary judgment should be granted against Reynolds in a related case, such fact is insufficient to rebut the SEC's prima facie case in this action. Faced with the SEC's evidence establishing a prima facie case, the Relief Defendants were required to produce affirmative evidence showing that their gains were not ill-gotten or that they had a legitimate claim to these gains. The Relief Defendants failed to do so. Instead, the only relevant evidence produced by the parties shows that the Rowlands' CAJ shares were given to them as a gift and were distributed in violation of Section 5, and Coutris' shares were either given to him as a gift or as compensation for his participation in the unregistered CAJ stock offering.[18] Accordingly, the Court finds that there is no dispute of material fact as to whether the Relief Defendants' proceeds from the sale of shares they received from Reynolds are ill-gotten gains to which they have no legitimate claim.

---

[16]The only substantive filing from the Rowlands and Coutris in this case is their response to the SEC's motion for summary judgment. They submitted no appendix with affidavits or any other evidence in support of their arguments, and they only cite SEC evidence to object to admission of that evidence. *See* Relief Defs.' Resp. 3.

[17]The Relief Defendants' other arguments are more appropriate as to the issue of remedies, which the Court will address below.

[18]The Court expresses no opinion regarding whether Coutris knowingly participated in an unregistered stock offering in violation of Section 5.

D.      *Remedies*

In the SEC's motions, it requests an order imposing injunctions and penny stock bars against Page and Testre "based on Page's principal role in [the Defendants' stock] scheme, his record of successive registration violation schemes and his unrepentant attitude." SEC Page Br. 3. Further, the SEC requests that the Court order Page and Testre to disgorge $2,485,266 in trading gains, award $400,284 in prejudgment interest, and impose third-tier civil penalties against Page and Testre. The SEC also requests disgorgement of $116,386 from the Rowlands and $244,605 from Coutris as well as prejudgment interest in the amount of $21,833 from the Rowlands and $37,235 from Coutris. The Court addresses the parties' arguments regarding this relief below.

i.      Disgorgement and Prejudgment Interest

As an initial matter, Page disputes whether disgorgement is an appropriate remedy in Section 5 cases, where no showing of scienter is required. While the SEC's cited cases primarily address securities fraud, courts frequently order disgorgement of funds in the Section 5 context. *See, e.g.*, *M&A West*, 538 F.3d at 1054 (affirming $2.6 million disgorgement order in Section 5 case); *Friendly Power*, 49 F. Supp. 2d at 1373 (ordering $2.4 million in disgorgement in Section 5 case). Given the Court's finding that Page violated Section 5, the Court finds that any gains from the associated stock trading are ill-gotten and should be disgorged. Accordingly, the Court looks to the SEC's evidence regarding the appropriate disgorgement amount.

The SEC bears the initial burden of showing that its requested disgorgement amount reasonably approximates the amount of profits connected to the violation, and then the burden shifts to the defendant to show that this figure is not a reasonable approximation. *See, e.g.*, *SEC v. Amerifirst Funding, Inc.*, 2008 WL 1959843, at *2 (N.D. Tex. May 5, 2008). The Court finds that

the SEC's summary judgment evidence, including its modified "First In, First Out" methodology, reasonably approximates Page's ill-gotten gains from CAJ stock. *See* Order Aug. 22, 2008 at 7-10, Case No. 3:08-cv-438-B, *SEC v. Reynolds* (discussing and approving First In, First Out methodology in related case). Further, the Court notes that it enjoys broad discretion in determining the amount to be disgorged. *See, e.g., SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1474-75 (2d Cir. 1996). Also, Page makes no argument objecting to the amount of requested disgorgement, but rather whether the SEC is entitled to disgorgement at all. Given the Court's finding that the SEC's requested amount reasonably approximates Page's profits and the lack of any evidence calling into question the SEC's calculation, the Court hereby **ORDERS** Page to disgorge $2,485,266.

Aside from arguing that disgorgement should not be ordered because there has been no finding by the Court that Reynolds violated Section 5,[19] the Relief Defendants appear to argue that the Court has no authority to order disgorgement at this time because the SEC did not previously seek an order freezing the Relief Defendants' assets. Further, the Relief Defendants object to the amount of disgorgement requested by the SEC, arguing that the SEC's expert declaration is based on unauthenticated documents that are hearsay. The Relief Defendants also request that they be allowed to "1) examine witnesses as to the accuracy and appropriateness of the Plaintiff's assertions as to disgorgement amounts and 2) demonstrate to the Court that Relief Defendants do not possess the financial wherewithal to pay the amounts sought by Plaintiff herein." Relief Defs.' Resp. at 3.

The Court rejects the Relief Defendants' arguments and overrules their objections. As stated above, the SEC made its prima facie case that Reynolds violated Section 5 and that the Relief

---

[19]The Court rejected this argument in Section III(C), *supra*.

Defendants' CAJ proceeds were ill-gotten gains to which they had no legitimate claim. Also, the Court finds that the SEC's summary judgment evidence, including its modified "First In, First Out" methodology, reasonably approximates the Relief Defendants' ill-gotten gains from CAJ stock. Accordingly, the burden shifts to the Relief Defendants to show that the amount requested does not reasonably approximate the ill-gotten gains or to show their inability to pay. Rather than cite specific evidence that would rebut the SEC's calculations, the Relief Defendants attack these calculations as "without foundation," based on unauthenticated documents which are hearsay. The Court overrules the Relief Defendants' objection regarding paragraphs 43 and 44 of the SEC's expert Mr. Kustusch's Declaration. The SEC attaches a declaration from the Rowland's stock broker that authenticates the Rowland's account statements and establishes these statements as business records under Federal Rule of Evidence 803(6). SEC Exs. 15, 21.

The Court also denies the Relief Defendants' request to reopen discovery in order to examine witnesses to determine the accuracy of the SEC's disgorgement calculations. The Relief Defendants provide no explanation as to why they did not diligently conduct discovery on this issue, or apparently any other issue,[20] prior to the discovery deadline,[21] nor have they at any time properly requested additional discovery under Federal Rule of Civil Procedure 56(f).

The Court similarly denies the Relief Defendants' request to introduce affidavits regarding their inability to pay. Inability to pay must be established by a preponderance of the evidence, and the Court is not required to accept the plain statement of a defendant to establish inability to pay.

---

[20]*See* SEC Relief Defs.' Mot. Reply 5 (stating that "the Relief Defendants did not propound a single discovery request on the Commission of any kind").

[21]The Court's Order of May 25, 2011 set the discovery deadline for June 23, 2011. The SEC filed its motions for summary judgment on June 30, 2011, after the close of discovery.

*SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993). Faced with the SEC's prima facie case, the Relief Defendants did not attach affidavits regarding their inability to pay and supporting evidence to their response to the SEC's motion. Instead, they request to submit affidavits at some future time without showing cause why they did not submit these affidavits with their response. Given the Relief Defendants' lack of diligence in conducting discovery and in submitting competent summary judgment evidence up to this point, the Court finds no reason to further delay proceedings. In light of the SEC's evidence and the Relief Defendants' failure to rebut this evidence, the Court **GRANTS** the SEC's motion for summary judgment to the extent it requests disgorgement of the Relief Defendants' ill-gotten gains. Accordingly, the Court **ORDERS** Reagan and Rodney Rowland to disgorge $116,386.98. The Court also **ORDERS** John Coutris to disgorge $244,605.94.

The Court may also award prejudgment interest on disgorgement amounts, in its discretion. Such award prevents parties from benefitting from what is in essence an interest-free loan resulting from illegal activity. *SEC v. Jakubowski*, 1997 WL 598108, at *2 (N.D. Ill. Sept. 19, 1997). In federal securities cases, courts generally calculate prejudgment interest by applying the underpayment rate published by the Internal Revenue Service. *See, e.g., SEC v. Koenig*, 532 F. Supp. 2d 987, 995 (N.D. Ill. 2007). Using the IRS's statutory interest rates on the disgorgement amounts above, the SEC calculated Page's prejudgment interest at $400,284 for period ending July 1, 2011, the Rowland's prejudgment interest at $21,833, and Coutris' prejudgment interest at $37,235. Kustusch Decl. ¶¶ 47-48; SEC Ex. 64 at 477-80. Page and the Relief Defendants do not set forth any particular objections to the SEC's calculations or the SEC's request for prejudgment interest generally. The Court finds, in its discretion and under its equitable powers, that Page and the Relief Defendants should pay the SEC's requested prejudgment interest amount. Accordingly, the Court hereby

**ORDERS** Page to pay $400,284 in prejudgment interest for the period ending July 1, 2011. The Court also **ORDERS** Reagan and Rodney Rowland to pay $21,833 and **ORDERS** John Coutris to pay $37,235 in prejudgment interest for the period ending July 1, 2011.

  ii.  <u>Other Remedies</u>

  The Court finds that there are disputed facts regarding, *inter alia*, Page's scienter, the egregiousness of his actions, and the likelihood that he would commit securities violations in the future. *See, e.g.*, *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004) (listing factors to be evaluated in determining appropriateness of permanent injunction in Section 5 case). Given the disputed facts in this case, the Court **DENIES** the SEC's motion to the extent it seeks summary judgment as to whether the Court should issue a permanent injunction, assess a third-tier civil penalty, and issue a penny bar stock bar against Page. The appropriateness of such remedies shall be determined after a trial or evidentiary hearing.

## IV.

## CONCLUSION

  For the reasons discussed above, the Court finds that there is no dispute of material fact as to whether Page and Testre violated Section 5 of the Exchange Act. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the SEC's Motion for Summary Judgment asserted against Page and Testre. The SEC's Motion is **GRANTED** to the extent it seeks summary judgment regarding Page's and Testre's liability under Section 5 of the Securities Act, disgorgement, and prejudgment interest. Page is hereby **ORDERED** to disgorge $2,485,266 and pay $400,284 in prejudgment interest. The SEC's Motion is **DENIED** to the extent it seeks summary judgment as

to whether the Court should issue a permanent injunction, assess a third-tier civil penalty, and issue

a penny bar stock bar against Page.

The Court also **GRANTS** the SEC's Motion for Summary Judgment asserted against the

Relief Defendants. Reagan and Rodney Rowland are hereby **ORDERED** to disgorge $116,386.98

and pay $21,833 in prejudgment interest. John Coutris is hereby **ORDERED** to disgorge

$244,605.94 and pay $37,235 in prejudgment interest.


SO ORDERED.

DATED: November 9, 2011.


_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE