UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-1742-B |
| CONNECTAJET.COM, INC., et al., | § § § | |
| Defendants, | § § | |
| and | § § | |
| SAN ANTONIO FEDERAL CREDIT UNION, and its successors or assigns, | § § § § | |
| Garnishee. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Robert Cantu's and Martin Cantu's Motions Requesting Hearings. (Docs. 134 & 135). For the following reasons, the Court DENIES both Motions.

I.

BACKGROUND

The United States Securities and Exchange Commission (the Commission or Judgment Creditor) filed an Application for a Writ of Garnishment against Martin M. Cantu (Cantu or Judgment Debtor), Doc. 119-1, Pl.'s Appl., Ex. 1, to garnish his property as payment for a judgment totaling $632,327.00. Doc. 55, Order 4–5. The Court granted the Application, Doc. 122, and issued a Writ of Garnishment (the Writ) to San Antonio Federal Credit Union (Garnishee). Doc. 123.

Garnishee filed its Answer to the Writ (the Answer) on August 10, 2015, stating that Cantu had an interest in two accounts: (1) a joint account with his spouse; and (2) a joint account with his son, Robert Cantu (Cantu's son). Doc. 126, Garnishee's Answer 3.

Cantu did not respond to this, but Cantu's son contacted the Commission on October 13, 2015, claiming that he owned the funds in the second account. Doc. 136, Pl.'s Resp. 3. The Commission responded by (1) requesting Cantu's son provide evidence to support his claim, and (2) providing him with a draft form to request a hearing to dispute the garnishment. Doc. 132-1, Pl.'s Mot., Ex. 1. At this time, Cantu's son did not request a hearing. Three months later, the Commission obtained an Order to Disburse the Garnished Funds. Doc. 133, Order. The garnished amount in the Order, which totaled $38,267.02, was based on the cumulative balance of the two joint bank accounts. *Id.* at 2.

That same day, Cantu's son filed his Motion Requesting Hearing (Cantu's son's Request). Doc. 134, Movant's Req. He objects to the Writ, arguing that: (1) he is the sole owner of the account, (2) his father is merely a convenience signer with no ownership interest in the account, (3) all of the funds in the account were a result of his earnings, and (4) he has never owned or sold any ConnectAJet stock. *Id.* at 3. Shortly after, Cantu filed his Motion Requesting Hearing (Cantu's Request). Doc. 135, Def.'s Req. He also objects, arguing that: (1) the funds in the account are for he and his wife's retirement, (2) none of the funds are a result of ConnectAJet profits, (3) he has no control over his son's account, and (4) the funds in the account are from savings prior to ConnectAJet. *Id.* at 2–3. The Commission responded to both Requests, and Cantu and Cantu's son have replied. Their Requests are now ready for review.

II.

LEGAL STANDARDS

Under the Federal Debt Collection Procedure Act (FDCPA), a court may issue a writ of garnishment against property "in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205(a). A judgment debtor may request a hearing in a garnishment proceeding under 28 U.S.C. § 3202(d) or 28 U.S.C. § 3205(c). *United States v. Pettigrew*, No. 3:10-CV-2142, 2011 WL 900545, at *1–2 (N.D. Tex. Mar. 14, 2011).

A.  *Hearings under 28 U.S.C. § 3202(d)*

Under section 3202(d), a defendant can request a hearing on the writ of garnishment, but the subject matter of that hearing is limited to: (1) the probable validity of a claim of exemption, (2) compliance with the statutory requirements for the issuance of a writ, and (3) issues pertaining to the enforcement of a default judgment. *Id.* at *1 (citing 28 U.S.C. § 3202(d)). Thus, a hearing under section 3202(d) is only necessary where the hearing is requested for one of the three grounds under that provision. *See United States v. Stone*, 430 F. App'x 365, 368 (5th Cir. 2011); *United States v. Goyette*, 446 F. App'x 718, 720–21 (5th Cir. 2011).

Property exempt from garnishment includes property enumerated in 26 U.S.C. § 6334(a), as well as certain federal benefits like Social Security Benefits, Civil Service Retirement Benefits, and Veterans' Benefits. *See* 42 U.S.C. § 407(a); 5 U.S.C. § 8346(a); 38 U.S.C. § 5301(a)(1). The defendant bears the burden of showing that an exemption to garnishment applies. *See United States v. Harris*, No. 3:10-CV-2133, 2012 WL 5845544, at *2 (N.D. Tex. Nov. 19, 2012).

B.  *Hearings under 28 U.S.C. § 3205(c)(5)*

Under section 3205(c)(5), a judgment debtor may request a hearing to object to the writ of garnishment. 28 U.S.C. § 3205(c)(5). Although hearings under section 3205(c)(5) are mandatory, the request must comport with certain procedural requirements. *United States v. Crowther*, 473 F. Supp. 2d 729, 731–32 (N.D. Tex. 2007). To meet these procedural requirements, "[t]he objecting party must (1) within 20 days after receipt of the answer (2) file a written objection to the answer and request a hearing, (3) which . . . must state the grounds [for the objection], and (4) serve the objection and request for hearing on the garnishee and all parties." *Id.*; 28 U.S.C. § 3205(c)(5). The defendant bears the burden of proving any objection raised. 28 U.S.C. § 3205(c)(5). The statute also provides that "co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located." 28 U.S.C. § 3205(a).

III.

ANALYSIS

Neither Cantu nor Cantu's son provided a statutory basis for their Requests. As they are proceeding *pro se*, the Court will construe their objections broadly and analyze them under both statutory routes for requesting a garnishment hearing.

A.  *Cantu's Son's Request*

  1.  <u>§ 3202(d) Applied to Cantu's Son's Objections</u>

Cantu's son has not asserted that the Commission failed to meet the statutory requirements for the issuance of the Writ and this case does not involve a default judgment; thus, Cantu's son must demonstrate a claim of exemption in order to meet the subject matter requirements for a

hearing under section 3202(d). *See Stone,* 430 F. App'x at 368. The Court will now consider whether any of his objections warrant a claim of exemption.

Cantu's son argues that he is the sole owner of the account and Cantu is merely a convenience signer on the account. Doc. 134, Movant's Req. 3. To support his argument, Cantu's son offers account receipts, account statements, deposit receipts, and wage and earning transcripts from the Internal Revenue Service (the IRS). *Id.* at 4–16; Doc. 141, Movant's Reply 5–19. None of these establish that the account is solely Cantu's son or that Cantu is a convenience signer; they merely show varying balances and deposits over a roughly four year period with no explanation of account ownership.

In direct contradiction to Cantu's son's arguments, Garnishee, in its Answer, identified the account as a "joint account with child." Doc. 126, Garnishee's Answer 3. Similarly, records produced by the Garnishee to the Commission further indicate that the account is a "joint multiple party account" rather than a convenience account. Doc. 137-4, Pl.'s Resp., Ex. 4. While there is an area to mark "convenience account" and "convenience signer designation," these are both left blank. *See id.* Instead, Cantu's son is designated as the Member/Owner and Cantu is designated as the Joint Owner, in congruence with the provided explanation of a joint multiple party account,[1] and the form contains both Cantu's son's and Cantu's signatures.[2] *See id.* Thus, Cantu's son has failed to establish that the account shared with Cantu is not a joint account. *See Betty Brooks v. Sherry Lane Nat'l Bank,*

---

[1] Under Garnishee's account description for a joint multiple party account, the "[p]arties to the account are listed as Member/Owner and Joint Owner." Doc. 137-4, Pl.'s Resp., Ex. 4.

[2] It is worth noting that although Cantu's son is listed as the Member/Owner, the account address is not the address given in his Request, rather, the account address is still Cantu's address. *See* Docs. 134, Movant's Req. 2, 5; Doc. 135, Def.'s Req. 4.

788 S.W.2d 874, 877 (Tex. App.— Dallas 1990, no writ) (proof that "both were signatories on the accounts and both had the right to remove funds and otherwise control the accounts" was conclusive proof of joint accounts).

Similarly, Cantu's son maintains that all of the funds in the account are a result of his own earnings. Doc. 134, Movant's Req. 3; Doc. 141, Movant's Reply 2–3. But none of the evidence produced by Cantu's son establishes that the funds are solely his contribution. First, he offers several deposit statements with no documentation or business records of where the deposits originated. Doc. 134, Movant's Req. 4–16.[3] Second, he offers wage and earning transcripts from the IRS to show that (1) he paid taxes on the interest, and (2) the interest amount on the account changed periodically with the amounts he deposited into the account. Doc. 141, Movant's Reply 2, 5–19. However, Cantu's son has not provided any case law to support this contention that paying taxes on the interest of the account establishes ownership of the account funds.

Lastly, Cantu's son repeatedly states that he has never been involved with the sale of ConnectAJet stock. Doc. 134, Movant's Req. 3; Doc. 141, Movant's Reply 2–3. "The FDCPA does not contain a tracing requirement. Consequently whether the property subject to the writ of garnishment was used in criminal activity or purchased with the proceeds of criminal activity has absolutely no bearing on the government's authority to levy under the FDCPA." *United States v. Latorre*, No. 3:12-CR-439, 2014 WL 3530830, at *1 (N.D. Tex. July 16, 2014) (citation and internal quotations omitted). Cantu's son's claim does not exempt the funds in the account from

---

[3] To counter his claim, the SEC produced evidence of a check deposited into the account paid to "Martin Cantu dba Blossom Plumbing" rather than Cantu's son. Doc. 136, Pl.'s Resp. 6; Doc.137-9, Pl.'s App., Ex. 9. Cantu's son offered a deposit receipt with the same date and in the same amount. Doc. 134, Movant's Req. 16.

garnishment. In sum, Cantu's son has not presented any valid claims to exemption.

### 2. § 3205(c)(5) Applied to Cantu's Son's Objections

Even construing Cantu's son's objections broadly, he has failed to meet the procedural requirements of section 3205(c)(5). *See* Doc. 134, Movant's Req. Cantu's son neither served his Request on Garnishee nor filed a timely Request. *See United States v. Blevins*, 403 F. App'x 101, 103–04 (7th Cir. 2010) (service of objection on garnishee a requirement for § 3205(c)(5) hearing). Thus, he cannot successfully request a hearing under section 3205(c)(5).

*B.     Cantu's Request*

### 1. § 3202(d) Applied to Cantu's Objections

Cantu has not asserted that the Commission failed to meet the statutory requirements for the issuance of the Writ and this case does not involve a default judgment; thus, Cantu must demonstrate a claim of exemption in order to meet the subject matter requirements for a hearing under section 3202(d). *See Stone,* 430 F. App'x at 368. The Court will now consider whether any of his objections warrant a claim of exemption.

Cantu argues that (1) none of the funds are a result of ConnectAJet profits and (2) the funds in the account are from savings prior to his involvement with ConnectAJet. Whether the funds can be traced to ConnectAJet does not affect whether the funds are exempt from garnishment. *See Latorre*, 2014 WL 3530830, at *1 (finding no tracing requirement under the FDCPA).

Additionally, Cantu argues that the funds in the account are for he and his wife's retirement. Doc. 135, Def.'s Req. 2–3. He does not contest that the account shared with his wife is a joint account, but rather that the funds in the account are savings for retirement. *Id.* Although certain property is exempt from garnishment, including certain annuity and pension payments, savings for

retirement in a joint account are not. *See* 26 U.S.C. § 6334(a); *see also United States v. Edward D. Jones & Co., L.P.*, No. 4:10-CR-57.6, 2011 WL 7025905, at *3 (E.D. Tex. Dec. 21, 2011) ("The listed exempt property [in 26 U.S.C. § 6334] does not include retirement accounts, IRA's, or similar retirement funds."). Cantu's account does, however, contain Social Security Benefits and Civil Service Benefits, totaling $6,614.56, which are federal benefits exempt from garnishment. Doc. 126, Garnishee's Answer 3–4. Thus, the total garnished amount in the Court's original Order—$38,267.02—should be reduced by $6,614.56 to $31,652.46. *Id.*

  2. § 3205(c)(5) Applied to Cantu's Objections

Even construing Cantu's claims broadly, Cantu failed to meet the procedural requirements of section 3205(c)(5). Doc. 135. Not only was Cantu's Request untimely, but he also failed to serve his Request on Garnishee. *Blevins*, 403 F. App'x at 103–04.

IV.

CONCLUSION

For these reasons, the Court DENIES both Cantu's son's and Cantu's Motions Requesting Hearings. (Docs. 134 & 135). It is ORDERED that Garnishee, San Antonio Federal Credit Union, pay $31,652.46 to the United States Securities and Exchange Commission.

SO ORDERED.

SIGNED: February 25, 2016

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE